**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAPID CIRCUITS, INC., ARTHUR L.** | : | **CIVIL ACTION** |
| **HUDSON, THERESA G. HUDSON,** | : | |
| **FRANCIS E. ZYSK, and LORRAINE G. ZYSK,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 10-6401** |
| **SUN NATIONAL BANK,** | : | |
| **SUN BANCORP, INC., DEEB, PETRAKIS,** | : | |
| **BLUM & MURPHY, P.C., and INEZ M.** | : | |
| **MARKOVICH,** | : | |
| | : | |
| **Defendants.** | : | |

**M E M O R A N D U M**

Hon. Gene E.K. Pratter                                                    May 2, 2011
U.S. District Court Judge

**Introduction**

     Arthur Hudson and Francis Zysk purchased Rapid Circuits, Inc., a Pennsylvania company

that manufactures printed circuit boards, in January 2006. To complete this purchase, Messrs.

Hudson and Zysk secured two loans from Sun National Bank, guarantees for which were signed

by their wives, Theresa Hudson and Lorraine Zysk. In this litigation, the Hudsons, the Zysks,

and Rapid Circuits (hereinafter referred to together as "Rapid Circuits" unless otherwise

appropriate) collectively have sued Sun National Bank ("Sun"), its parent company Sun Bancorp,

Inc., and Sun's attorneys, the law firm Deeb, Petrakis, Blum & Murphy and a partner at that firm,

Inez Markovich, in her individual capacity (hereinafter referred to together as "Attorneys") as a

result of actions taken by Sun and the Attorneys after Rapid Circuits began to have troubles

handling the indebtedness.

In its Amended Complaint, Rapid Circuits asserts that Sun breached its duty of good faith and fair dealing, that it intentionally interfered with Rapid Circuits' current and prospective business and contractual relations, that Sun should be required to restructure the loans pursuant to promissory estoppel principles, that Sun converted the Plaintiffs' property, that Sun engaged in fraud and misrepresentation, that Sun violated the constitutional rights of Plaintiffs by seizing their property without notice, and that Sun defamed Plaintiffs and invaded their privacy. Rapid Circuits further contends that it deserves injunctive relief, and that Sun Bancorp should be held vicariously liable for the actions of Sun. Rapid Circuits also asserts that the Attorneys should be liable for several of the above-described claims, as well as for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Sun and the Attorneys each filed a Motion to Dismiss, both of which are now addressed by the Court.[1]

---

[1] Befitting the antipathy that has infected the relations between and among the parties and counsel, and the resulting exponential growth of the claims *inter se*, this case has a somewhat complex relationship with several other matters before this Court. Plaintiffs originally filed this action in the Philadelphia Court of Common Pleas. It was removed to federal court by the Attorneys. Around the same time that Plaintiffs filed this action in state court, Sun filed breach of contract and/or breach of guarantee actions against Rapid Circuits in federal court. Specifically, in the Sun National Bank v. Rapid Circuits, et al. matter, Civil Action No. 10-5480, Sun National asserts two counts of breach of contract, one for each of the aforementioned loans, against Rapid Circuits, Mr. Hudson, and Mr. Zysk. In a related action, Sun National Bank v. Theresa Hudson and Lorraine Zysk, Civil Action No. 10-5481, Sun National asserts four counts of breach of guarantee against Ms. Hudson and Ms. Zysk – one count for each woman for each loan.

On December 28, 2010, Rapid Circuits filed an Amended Answer with Affirmative Defenses and an Amended Counterclaim in both the 10-5480 and 10-5481 matters. The "Amended Counterclaim" filed in both cases was merely the Amended Complaint in the 10-6401 matter re-styled as an Amended Counterclaim. Subsequent to filing their Motions to Dismiss in the 10-6401 matter, both the Attorney Defendants and the Bank Defendants filed Motions to Dismiss the Amended Counterclaim in the 10-5480 and 10-5481 actions.

Because in the 10-5480 and 10-5481 matters all parties specifically incorporated their

**Factual and Procedural Background**[2]

_____

arguments from the 10-6401 Motions to Dismiss the Amended Complaint into their Motions to Dismiss the Counterclaims, the Court will analyze only the substantive briefing of the parties in the 10-6401 matter.  See, e.g., Civ. Action No. 10-5480, ECF Nos. 21, 22, 25 and 26; see also Oral Argument Hr'g Tr, 5-6, Jan. 28, 2011.  Similar to the parties, the Court will specifically incorporate its analysis and conclusions as to the 10-6401 matter into the 10-5480 and 10-5481 matters.  The net substantive results will be sorted out and docketed in the three cases as appropriate.

Also before the Court is a separate mortgage foreclosure action, Sun National v. Rapid Circuits and United States of America, Civil Action No. 11-0432, removed from the Bucks County Court of Common Pleas on January 24, 2011 by Rapid Circuits.  In its Notice of Removal, Rapid Circuits represents that its counterclaims in No. 11-0432 are the same as those it raises in the 10-5480 and 10-5481 actions.  Notice, ¶¶ 7-8, Civ. A. No. 11-0432, ECF No. 1.  However, the motions to dismiss filed in the 11-0432 matter differ from those in the 10-5480 and 10-5481 matters in that both defendants move to strike paragraphs of the New Matter asserted by Rapid Circuits in addition to seeking dismissal of the same counterclaims asserted in the 10-5480 and 10-5481 matters.  Thus, the Court cannot dispose of the motions to dismiss in the 11-0432 matter only by specifically incorporating its analysis and conclusions as to the 10-6401 matter, and will address those motions to dismiss separately.

[2]    For the purposes of these motions to dismiss, it is axiomatic that the facts alleged in the Amended Complaint are considered to be true and the Court is obliged to confine itself to the pleading.  "To the extent that the court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, it is converted to a motion for summary judgement."  Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 1999).

However, the court may consider documents attached as exhibits to a complaint and also "a document integral to or explicitly relied upon in the complaint . . . _without_ converting the motion [to dismiss] into one for summary judgment."  In re Burlington Coat Factor Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added); Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192 (3d Cir. 1993) (considering a purchase and sales agreement attached by defendants to a motion to dismiss where the "complaint is based on this contract and describes some of its terms" but was not attached as an exhibit to the complaint).  Here, Rapid Circuits included as an exhibit to its original Complaint a copy of the August 2, 2010 collection letter sent by the Attorneys to Rapid Circuits' customers, as well as the UCC-1 Financing Statement sent with that letter.  While these documents were not attached as exhibits to the Amended Complaint, they were referenced therein as an attached exhibit.  See Am. Compl. ¶ 21.  Thus, these documents are appropriately considered by the Court in its analysis of the motions to dismiss.  See Pension Benefit, 998 F.2d at 1196.

Sun attached as exhibits to its Motion to Dismiss the original loan documents.  See Sun Mot. to Dismiss the Am. Compl., ECF No. 24.  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit, 998 F.2d at 1196.  "When a complaint

In January 2006, Sun made two loans to Rapid Circuits, Arthur Hudson, and Francis

Zysk: a commercial mortgage of $1,650,000 and a line of credit for $350,000.  Am. Compl. ¶¶

17, 18, ECF No. 23; see SBA Notes, attached as Exs. 1 and 3 to Sun Mot. to Dismiss, ECF No.

24 ("SBA Notes").  Representatives of Sun and Messrs. Zysk and Hudson signed the loan

documents.  See SBA Notes.  Ms. Zysk and Ms. Hudson, in turn, guaranteed the loans.  See

Commercial Pledge and Security Agreements, attached as Exs. 7 and 8 to Sun Mot. to Dismiss.

Rapid Circuits had cash flow difficulties in 2010.  Am. Compl. ¶ 19.  In the first half of

2010, and before June 29, 2010, J.W. Brehm, a vice president at Sun, told Rapid Circuits that he

would "attempt to restructure the SBA Loans."  Id.  On June 29, Mr. Brehm sent a letter stating

that the loans were in default, and that Rapid Circuits had to repay them in full or work out an

acceptable payment plan, or else Sun would commence debt collection actions.  Id. ¶ 20.

Approximately five weeks later, "on behalf of and authorized by the Bank", the Attorneys sent

letters to clients of Rapid Circuits that may or may not have then owed money to Rapid Circuits,

seeking to recover Rapid Circuits' accounts receivable for the benefit of the Bank on account of

---

relies on a document, the plaintiff obviously is on notice of the contents of the document, and the
need for a chance to refute the evidence is greatly diminished" such that a motion to dismiss that
relies upon such a document is not converted into a motion for summary judgment.  Id. at 1196-
97.  While Rapid Circuits does not expressly reference the loan documents or describe terms
contained therein in its Amended Complaint, it does assert that the "Bank's actions and the
actions of the Bank's Counsel on the Bank's behalf constituted a breach of the Bank's
contractual duty owed to RCI and the other Plaintiffs."  Am. Compl. ¶ 114.  Because Rapid
Circuits expressly references a breach of contract, here quite obviously none other than the loan
documents that brought all these litigants together, the Court can appropriately consider those
documents without converting these motions to dismiss into motions for summary judgment.
    The Court notes too that Sun attached both loan and guarantee documents as exhibits to
its Complaints in the 10-5480 and 10-5481 matters.
    The Court also observes that the parties' counsel demonstrated no self-restraint in terms
of their frequent references to the documents mentioned here without regard to who produced the
documents, how they did so, or why.

the defaulted loans.  Id. ¶¶ 21, 38.  The Attorneys provided no advance notice to the debtors of

the intent to send these letters, and no copy of the list of recipients or of the letter was provided to

Rapid Circuits by the Defendants.  Id. ¶¶ 24, 34, 39.  Included with the letters was a copy of the

UCC-1 Financing Statement that was filed, pursuant to the Pennsylvania Uniform Commercial

Code, with the Commonwealth of Pennsylvania in 2006, when the loans originated.  Id. ¶¶ 25,

27; see also UCC-1 Financing Statement, attached as Ex. 1 to Compl., ECF No. 1.  Rapid

Circuits was not provided an advance opportunity to object to these actual collection efforts.  See

Am. Compl. ¶ 93.  As discussed below, a provision regarding this potential self-help technique is

included in the loan documents, but there is no discussion in the papers presented to the Court to

date, other than an *argument* that loan contracts between a bank and a small business are

inherently unconscionable in light of the power differential between the parties, as to whether

there was any objection to the self-help provisions at the time the loan papers were presented for

signature.

In its Amended Complaint, Rapid Circuits asserts that these letters hurt its business and

its business reputation, and provided competitors leverage in their efforts to lure Rapid Circuits'

customers away.  Id. ¶¶ 38-50.  Rapid Circuits contends that Sun had these letters sent in an

effort to drive Rapid Circuits out of business so that the Bank could liquidate Rapid Circuits'

assets.  Id. ¶ 51.  Shortly after the sending of letters to Rapid Circuits' clients, Sun seized and

liquidated personal investment accounts of the individual plaintiffs.  Id. ¶ 54.  Sun had previously

prevented Plaintiffs from using the funds contained in these investment accounts to improve the

business operations and finances of the company.  Id. ¶ 58.  Plaintiffs contend that "[b]ut for the

Bank's ongoing actions, [Rapid Circuits] would be able to continue as a viable business,

continue as gainful employment for the multiple employees of the company, and repay the SBA loans." Id. ¶ 77. Rapid Circuits also takes on the Commonwealth of Pennsylvania and contends that 13 Pa. C.S.A. § 9607 is unconstitutional because it permits creditors to seize a debtor's accounts receivable without notice to the debtor and without a hearing or opportunity to respond. Id. ¶ 99. Thus, Rapid Circuits claims that the actions taken by Sun and the Attorneys pursuant to this statute violated Rapid Circuits' "federally protected rights". Id. ¶¶ 99-100, 197-201.

As a result of the above-described actions and associated harms, Rapid Circuits alleges 11 counts against the defendants. Id. ¶¶ 110-253.[3] Rapid Circuits contends that Sun is liable for Breach of Duty of Good Faith and Fair Dealing (Count I), for Intentional Interference with Existing and Prospective Business and Contractual Relations (Count II), Promissory Estoppel (Count III), Conversion (Count IV), Fraud and Misrepresentation (Count V), violations of 42 U.S.C. § 1983 (Count VI), Defamation (Count IX), and Invasion of Privacy (Count X). Rapid Circuits also seeks injunctive relief (Count VIII) and seeks to hold Sun Bancorp vicariously liable for the actions alleged (Count XI).

Rapid Circuits similarly asserts that the Attorney Defendants are liable for Intentional Interference with Existing and Prospective Business and Contractual Relations (Count II), Conversion (Count IV), Fraud and Misrepresentation (Count V), violations of 42 U.S.C. § 1983 (Count VI), violations of RICO (Count VII), Defamation (Count IX), and Invasion of Privacy (Count X).

---

[3] Count X, Invasion of Privacy, ends with paragraph 247. Count XI, Vicarious Liability, begins with paragraph 221 and ends with paragraph 226. These paragraph numbers are duplicative of earlier paragraphs in the Amended Complaint. Thus the paragraphs of Count XI, currently numbered 221-226, are considered paragraphs 248-253 for purposes of this opinion.

Rapid Circuits also seeks injunctive relief (Count VIII).

Between them, the Motions to Dismiss challenge each of the various counts.

**Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (quoting <u>Conley</u>, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (citations omitted). The question is, briefly stated, has the claimant presented a "plausible" claim for relief? Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Id.</u> at 1965 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." <u>Skinner v. Switzer</u>, 131 S.Ct. 1289, 1296 (2011) (citations omitted); <u>see also</u> <u>Matrixx Initiatives, Inc. v. Siracusano</u>, - - S.Ct. - -, No. 09-1156, 2011 WL 977060, at *12 (Mar. 22, 2011). Nonetheless, to survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (confirming that <u>Twombly</u> applies to all civil cases).

The Court "must only consider those facts alleged in the complaint and accept all of those

allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

## Discussion

### A. State Law Claims

The majority of the counts alleged by Rapid Circuits sound in state, rather than in federal, law. The Attorneys assert that they are immune from liability under state law because their actions were taken on behalf of their client, Sun National, and because they owed no duty to Rapid Circuits. Because a finding of attorney immunity would dispose of the state law claims asserted by Rapid Circuits against the Attorneys, the Court will first address whether the Attorneys can invoke immunity in response to the claims against them.

A discussion of the motions to dismiss the individual state law claims follows.

1. <u>Attorney Immunity from State Law Claims</u>

Rapid Circuits alleges that the Attorneys are liable for intentional interference with contractual relations, conversion, fraud and misrepresentation, defamation, and invasion of privacy, all of which are intentional torts.

The Attorneys argue that these five intentional tort claims should be dismissed because the Attorneys are immune from suit pursuant to Pennsylvania law on attorney immunity. The Attorneys further assert that because Rapid Circuits acknowledges the Attorneys' actions were taken on behalf of the Attorneys' client and were authorized by state law, the Attorneys cannot be held liable for any state law claims asserted by Rapid Circuits. Specifically, the Attorneys contend that because Rapid Circuits acknowledges 13 Pa. C.S.A. § 9607 "permits creditors . . . to seize, under color of state law, accounts receivable of a debtor prior to entry of any judgment", Rapid Circuits has admitted that the Attorneys' actions were not only taken on behalf of their clients, but also were legal.

In opposition, Rapid Circuits argues that the Attorneys are not immune from suit because, while attorneys are immune from non-client suits alleging that their actions were negligent, the "attorney immunity" doctrine "does not provide any defense to claims against attorneys for intentional torts." Rapid Circuits contends that where attorneys have allegedly committed intentional interference with contractual relations, conversion, fraud and misrepresentation, defamation, and invasion of privacy, i.e., the kinds of claims leveled against the Attorneys here, such attorneys cannot be legally immune from liability for the harm intentionally caused by their actions. To justify the argument that intentional tortious conduct is at the root of the claims here, Rapid Circuits avers in the pleadings that the Attorneys sent collection letters to Rapid Circuits'

clients because the Attorneys knew such letters would have an adverse effect on Rapid Circuits' business. See Am. Compl. ¶ 76.

As suggested above, in Pennsylvania, an attorney "will be held liable for negligence only to his client. In the absence of special circumstances, he will not be held liable to anyone else." Smith v. Griffiths, 476 A.2d 22, 26 (Pa. Super. Ct. 1984) (affirming order sustaining preliminary objections where an individual sued opposing counsel for defamation on account of statements made to the court about the individual while the parties were involved in active litigation, and where the individual contended he was harmed by advice given by opposing counsel to that counsel's client but the complaint contained no allegations that the advice was intentionally erroneous in order to injure the individual). "Where an attorney represents a client in *litigation* or *during arms length negotiations*, the public interest demands that attorneys, in the proper exercise of their functions as such, not be liable to adverse parties for acts performed in good faith and for the honest purpose of protecting the interests of their clients." Id. (emphasis added); see also Brown v. Delaware Valley Transplant Program, 539 A.2d 1372, 1375 (Pa. Super. Ct. 1988) (affirming the dismissal of claims against an attorney because counsel has immunity from suit related to actions "undertaken in connection with representation of a client in a judicial proceeding"). Furthermore, to pursue their claim against the attorneys, a party must allege "more than that [an attorney] acted according to the instructions of" his client. Krank v. Barber, No. 89-2871, 1989 WL 107140, at *1 (E.D. Pa. Sept. 18, 1989) (dismissing a claim where plaintiff sought to hold attorney liable for refusing to release a lien where attorney had no authority to do so).

However, "[i]f an attorney's conduct is motivated by malice *or if he commits an*

10

*intentional tort*, . . . he *may* become personally liable for damage suffered by a third person." Smith, 476 A.2d at 26 (emphasis added); see also Pelagatti v. Cohen, 536 A.2d 1337, 1344-46 (Pa. Super. Ct. 1987) (reversing the dismissal of defamation claims against attorneys where those attorneys made statements about a plaintiff to the press because, as alleged, the identified statements could support a jury finding of defamation). "Absent *an intent to harm a third person by using a client unjustifiably as an instrument to inflict harm*, we will not impose liability upon an attorney for advice which he has given in good faith to a client for the purpose of serving a justifiable and proper interest of the client." Smith, 476 A.2d at 27 (emphasis added). To this end, where a "complaint does not contain averments that counsel committed an intentional tort *designed maliciously* to cause harm", that complaint fails to state a claim on which relief may be granted. Aetna Electroplating Co., Inc. v. Jenkins, 484 A.2d 134, 136 (Pa. Super. Ct. 1984) (emphasis added) (affirming the dismissal of claims against an attorney for including information in pleadings that he "knew or should have known" were incorrect because the attorney's actions during the course of a litigation were in good faith for the purpose of serving a justifiable and proper interest of his client).

Notwithstanding the arguably more restrictive language detailed above, notably regarding the immunity from liability for attorneys unless a complaint contains averments that counsel committed an intentional tort designed maliciously to cause harm, some Pennsylvania courts have permitted suits for defamation and for tortious interference with contractual relations to proceed against attorneys acting on behalf of, or in furtherance of interests related to those of, their clients. See, e.g., Bochetto v. Gibson, 860 A.2d 67 (Pa. 2004) (reversing a grant of summary judgment as to a defamation claim where attorneys conveyed a malpractice complaint

to reporters, because absolute immunity does not attach to extrajudicial actions of an attorney);

Remick v. Manfredy, 238 F.3d 248, 263-64 (3d Cir. 2001) (reversing district court dismissal of a

tortious interference with contract claim brought against attorneys without discussing attorney

immunity).  Other Pennsylvania courts have noted that suits could proceed against attorneys for

fraud and for intentional infliction of emotional distress.  See, e.g., Adelman v. Rosenbaum, 3

A.2d 15, 18 (Pa. Super. Ct. 1938) (stating "[a]n attorney is personally liable to a third party when

he is guilty of fraud, collusion, or a malicious or tortious act, and he is liable, as anyone else,

when he encourages and induces another to commit a trespass."); Legion Ins., Co. v. Doeff, 2001

WL 1807398, at *6 fn.13 (Pa. Com. Pl. Ct. June 6, 2001) (sustaining preliminary objections

because a joinder complaint did not contain sufficient allegations to sustain a claim for

intentional infliction of emotional distress, but noting that such a claim, appropriately pled, could

be sustained).  In short, "[i]f an attorney is actuated by malicious motives or shares the illegal

motives of his client, he may be personally liable with the client for damages suffered by a third

person as a result of the attorney's actions."  Naughton v. Mercy Hospital, 4 Pa. D. & C.4th 628,

636 (C.P. 1989).

In the Amended Complaint, Rapid Circuits contends that the Attorneys sent letters in

which they stated that they represented Sun in "proceedings" against Rapid Circuits and did not

provide notice to Rapid Circuits that such letters would be sent.  Am. Compl. ¶¶ 21-23, 34.

Rapid Circuits believes that some of these letters were sent to businesses that did not in fact owe

any payment to Rapid Circuits.  Id. ¶ 38.  The Attorneys have never provided a list of the

recipients of the letters, and refused to provide such a list.  Id. ¶¶ 39, 134.  The Attorneys used

allegedly fraudulent misrepresentations in the letters to demand accounts receivable from Rapid

Circuits' customers. Id. ¶ 102. The letters implied that Rapid Circuits was out of business and that customers should take their business elsewhere. Id. ¶¶ 49-50. Rapid Circuits claims that the Attorneys' actions have severely damaged the business operations of Rapid Circuits, and that the Attorneys have intentionally blocked the ability of Rapid Circuits to make payments on its loans. Id. ¶¶ 63, 138. The Attorneys allegedly acted with a purpose to facilitate Sun's exertion of total control over Rapid Circuits' business and property and to facilitate the liquidation of all Plaintiffs' assets. See id. ¶¶ 75, 76, 217. The Attorneys are said to have acted willfully, knowingly and with reckless indifference to the rights and interests of Rapid Circuits, id. ¶ 81, and their actions were supposedly wanton, outrageous, intentional and/or malicious, id. ¶¶ 143, 159, 229, 230, 238.

The Attorneys' actions were not taken in the context of actual ongoing litigation and Plaintiffs specifically allege that the Attorneys acted with an intent to harm Rapid Circuits. Consistent with the law as described above, with an arguably indulgent reading of the allegations of the Amended Complaint, and notwithstanding a serious appreciation for the potential ultimate application of immunity to lawyers appropriately pursing their clients' interests, the Court finds it would be premature to conclude now that the Attorneys are immune from suit and/or liability for the intentional torts alleged in the Amended Complaint. Whether these claims are otherwise alleged with sufficient particularity to survive a motion to dismiss is addressed below.

2. State Law Claims Asserted Against both the Attorneys and Sun

The Court first addresses Rapid Circuits' state law claims asserted against both the

Attorneys and Sun: Intentional Interference with Contractual Relations (Count II), Conversion (Count IV), Fraud and Misrepresentation (Count V), Defamation (Count IX), and Invasion of Privacy (Count X).

i. Intentional Interference with Contractual Relations

In Pennsylvania, the elements of a cause of action for intentional interference with a contractual relation are: (1) the existence of a contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania, 7 A.3d 278, 288-289 (Pa. Super. Ct. 2010) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

"[I]n a complaint for interference with present contractual relations, a plaintiff must allege with whom it had the contractual relations and identify the alleged relationships." T.H. Services Group, Inc. v. Independence Blue Cross, No. 98-4835, 1999 WL 124408, at *4 (E.D. Pa. Mar. 4, 1999). Further, "[t]he presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff." Bahleda v. Hankinson Corp., 323 A.2d 121, 122-23 (Pa. Super. Ct. 1974). The absence-of-privilege element "requires proof that the defendant's actions were *improper* under the circumstances presented[.]" Walnut Street Assocs., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa. Super. Ct. 2009) (emphasis in original) (reversing the denial of JNOV because the trial court should have found truthful statements were not improper as a

matter of law and thus could not form the basis for a tortious interference with contract claim).

The Restatement (Second) of Torts supplies many of the underpinnings for this cause of action. Under Pennsylvania law:

> [T]he court must look to section 767 of the Restatement (Second) of Torts, [which] provides the following factors for consideration [in determining the propriety of a defendant's conduct]: 1) the nature of the actor's conduct; 2) the actor's motive; 3) the interests of the other with which the actor's conduct interferes; 4) the interests sought to be advanced by the actor; 5) the proximity or remoteness of the actor's conduct to interference, and 6) the relationship between the parties.

Steffy, 7 A.3d at 289 (quoting Strickland, 700 A.2d at 985). Under certain circumstances, harmful conduct should be permitted without liability. Walnut Street Assocs., 982 A.2d at 98. This decision depends on "a judgement and choice of values in each situation." Id. (quoting Restatement (Second) of Torts § 767 cmt. b (1979)).

In Count II of the Amended Complaint here, Rapid Circuits alleges that commercially unreasonable collections letters which falsely implied that Rapid Circuits was currently involved in litigation (presumably by use of the familiar "v" used as an abbreviation for "versus") with its lender were sent to present and/or former customers that neither Sun nor the Attorneys knew for sure actually owed payments to Rapid Circuits at the time the letters were sent. Am. Compl. ¶¶ 131-36. Rapid Circuits was not provided a list of recipients of the letters. Id. ¶ 120. Rapid Circuits contends that these actions were taken in an attempt to assert total control over its business and property for the purpose of then liquidating it. Id. ¶ 76.

Sun contends that this claim must be dismissed because Sun's right to Rapid Circuits' accounts receivable in the event of that company's default is unequivocally articulated in the loan documents. Sun argues that it was acting to protect its legitimate interests and that its actions

were privileged. Sun states that under the circumstances it cannot be found to harbor the intent to harm Rapid Circuits required for this claim to be viable. Sun further notes that Rapid Circuits has not specifically identified with what contractual relations it allegedly interfered. The Attorneys, without citation to supporting caselaw, contend that where consideration of factual allegations in a complaint and of documents attached or related to that complaint "fail to show that acts done were unjustified, or where they affirmatively show that interference was justified or constituted an exercise of an absolute right," a claim for intentional interference with contractual relations must be dismissed.

Arguing that it properly asserted a claim for "Intentional Interference with Existing and Prospective Contractual Relations", Rapid Circuits counters that because Sun and its counsel sent collection letters to customers who did not owe any money to Rapid Circuits, the sending of these letters was not a privileged action such that Sun could escape liability. Rapid Circuits does not address at all that, for example, the loan documents permit Sun, in the event there is a default, "without notice or demand and without giving up any of its rights" to "take possession of any collateral", or that Sun was granted a security interest in Rapid Circuits' accounts receivable pursuant to the Security Agreement signed by the parties. See SBA Note, attached as Ex. 1 to Sun's Mot. to Dismiss; Security Agreement, § B.2.II, attached as Ex. 5 to Sun's Mot. to Dismiss. Instead, Rapid Circuits simply contends that actions taken by Sun and its counsel were commercially unreasonable, even under the terms of the agreements between the parties.

In looking to the factors identified in Section 767, notably the nature of Sun's conduct, Sun's motive, the relationship between Sun and Rapid Circuits, and the interests sought to be advanced by Sun, the Court recognizes Sun's sensible argument that the terms of the loan

agreements permitted the collection actions once Rapid Circuits defaulted and ceased paying its loans, see Security Ag., § B.2.II, and that Rapid Circuits arguably had notice that such actions would be taken, see Am. Compl. ¶ 20.  However, Sun does not identify, nor can the Court locate, any provisions of the loan agreements that permit Sun to contact customers that do not actually have outstanding accounts receivable regarding a default by Rapid Circuits, as Rapid Circuits has alleged occurred.  Had Rapid Circuits alleged that Sun only contacted actual account debtors, the Court might be more easily persuaded that Sun's actions were proper under the terms of the loan agreements.  However, the Court cannot conclude as a matter of law that it is appropriate for a bank to rely upon a dated customer list when initiating actions to collect accounts receivable, allegedly sending collections letters to customers which may not actually be account debtors.

Because Rapid Circuits has alleged that (1) it had contractual relationships with the recipients of the letters; (2) the letters were sent with the purpose of interfering with those relationships so that Rapid Circuits would go out of business; (3) some number of the letter recipients did not actually owe accounts receivable; and (4) Rapid Circuits remains injured in its ability to operate as an ongoing concern by the payment of accounts receivable to Sun, Rapid Circuits has sufficiently alleged a claim for intentional interference with its contractual relations.[4]

---

[4] Rapid Circuits' Amended Complaint does not identify any *prospective* contractual relation that objectively appears to be reasonably probable with which the Defendants' actions interfered.  It does not state a claim for intentional interference with prospective contractual relations.  See, e.g., Schulman v. J.P. Morgan Inv. Management, Inc., 829 F. Supp. 782, 786 (E.D. Pa. 1993) (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979)).  Therefore, to the extent the Amended Complaint purports to advance any such claim, it is dismissed.

ii. Conversion

"Conversion is a tort by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification." Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003) (citing Chrysler Credit Corp. v. Smith, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994)).

In a conversion claim, a plaintiff must have had actual or constructive possession of a chattel at the time of the alleged conversion in order to state a cause of action in conversion. Id. The elements of a claim for conversion are: "(1) the deprivation of another's right in, or use or possession of, property, (2) without the owner's consent, and (3) without lawful justification." Joyce v. Alti America, Inc., No. 00-5420, 2001 WL 1251489, at *5 (E.D. Pa. Sept. 27, 2001).

Sun argues that Rapid Circuits' claim of conversion fails because Sun had a lawful justification for collecting the account receivables and for liquidating the investment accounts, notably that Rapid Circuits had defaulted on its loans, that the possible effects of a default were clearly identified by and in the loan documents, and that Rapid Circuits had been informed it was in default and ought to have known that Sun would initiate collection actions as referenced in the loan documents. Sun further contends, without citation to cases supporting the proposition, that Rapid Circuits, having granted security interests to Sun in the loan agreements, was not "in possession" of its assets so much so that it can state an unfettered claim for conversion. The arguments of the Attorneys for this claim do not materially differ from those of Sun.

Rapid Circuits argues that the law relied upon by Sun and the Attorneys does not support their arguments and that the Defendants' actions were not lawfully justified by the loan documents. Specifically, but without reference to provisions in the loan documents, Rapid

Circuits contends that the Defendants acted improperly and "well beyond the scope of any rights under the loan documents or any statute."  Rapid Circuits alleges that these actions were commercially unreasonable, and thus, arguably not legally justified.

In Count IV of its Amended Complaint, Rapid Circuits alleges that Sun and the Attorneys "without privilege . . . seized personal investment funds . . . and collected accounts receivable owed to [Rapid Circuits] from customers of Rapid Circuits."  Am. Compl. ¶ 157.  Specifically, the Attorneys sent letters to Rapid Circuits' customers stating that Sun was entitled to collect Rapid Circuits' accounts receivable.  Id. ¶¶ 21, 29.  Pursuant to these letters, Sun obtained accounts receivable payments from certain customers of Rapid Circuits which otherwise would have been paid directly to Rapid Circuits.  Id. ¶ 43.  Around the same time these letters were sent, and without notice to the Hudsons or the Zysks, Sun seized and liquidated certain personal investment accounts owned by those individuals that had been used to help secure the loans.  Id. ¶ 54.

Although decidedly sparse, Rapid Circuits' Amended Complaint sufficiently alleges the elements of a claim for conversion.  Rapid Circuits alleges that it was deprived of its right to the accounts receivable and that it did not consent to this deprivation.  Whether the actions of Sun and the Attorneys were in fact legally justified by the terms of the loan agreements and by 13 Pa.C.S.A. § 9607 is a question better addressed at another stage in the litigation.  See Al Makaaseb General Trading Co. v. U.S. Steel Intern., Inc., 412 F. Supp. 2d 485, 501 (W.D. Pa. 2006) (granting *summary judgment* as to a claim of conversion where a contract established that the alleged converter had lawful justification to act as it did in regards to the disputed property).

iii. Fraudulent Misrepresentation[5]

To assert a claim for fraudulent misrepresentation in Pennsylvania, a party must allege: (1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the reliance. Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments, 951 F.2d 1399, 1409 (3d Cir. 1991). "It is well-established that a cause of action for fraud must allege a misrepresentation of a past or present material fact" and that "the breach of a promise to do something in the future does not constitute fraud." Giordano v. Claudio, 714 F. Supp. 2d 508, 519 (E.D. Pa. 2010) (quoting Krause v. Great Lakes Holdings, Inc., 563 A.2d 1182, 1187 (Pa. Super. Ct. 1989)). However, a "statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." Mellon Bank Corp., 951 F.2d at 1410.

In its Amended Complaint, Rapid Circuits alleges that the Defendants engaged in two actionable instances of fraudulent misrepresentation. See Am. Compl. ¶ 161. The first instance occurred when Sun represented to Rapid Circuits that it would attempt to restructure the SBA loans. Id. The second instance occurred when the Attorneys, on behalf of Sun, sent collection letters that allegedly represented Rapid Circuits and Sun were involved in litigation. Id. The Court concludes from the Amended Complaint that Rapid Circuits seeks to hold only Sun liable for the first alleged fraudulent misrepresentation, and seeks to hold all Defendants liable for the

---

[5] While Rapid Circuits titled Count V "Fraud and Misrepresentation", the allegations contained in the Count relate only to "misrepresentation" or "fraudulent misrepresentation." Therefore, the Court assumes that the title of the Count represents some over-reaching on the part of the Plaintiffs. The Court focuses only on the substance of the text of the allegations.

second.

As to the first statement, Sun maintains that it cannot be held liable for the alleged statement that it would attempt to restructure the loans, because "to be actionable, the misrepresentation must be of a past or present material fact" and "the breach of a promise to do something in the future is not actionable fraud." As to the second statement contained in the letters, Sun contends that Rapid Circuits cannot bring this cause of action when the statement at issue is made to account debtors who are not parties to the suit. See Hr'g Tr. 55-56. Regarding the statements in the letters, the Attorneys assert that the representations in the letter were true such that the claim must be dismissed. In particular, the Attorneys argue that the parties were in fact adverse and that Sun was engaged in a course of action (a "proceeding").

Rapid Circuits maintains that it has stated a viable claim for fraudulent misrepresentation, as the statement regarding an attempt to restructure the loans conveyed a present intention to in fact restructure the loans, upon which Rapid Circuits relied. Rapid Circuits also argues it has sufficiently alleged that the contents of the letter sent to its clients – particularly a "v" included in the subject line and a statement that the Attorneys represented Sun in "proceedings" against Rapid Circuits – falsely represented that Rapid Circuits was presently involved in litigation with its bank, was out of business, or had been taken over by the Bank. The Court considers it significant that Rapid Circuits does not offer any argument regarding whether it has standing to assert a claim for fraudulent misrepresentation for statements in the letter that were made to third parties.

As to the first alleged instance of fraudulent misrepresentation, Rapid Circuits claims in the Amended Complaint that it justifiably relied upon Sun's statement that it would attempt to

restructure the loans, and thus focused on running its business (presumably in lieu of focusing on its finances). Id. ¶¶ 162-64. Upon careful review of the Amended Complaint, however, the Court cannot identify any allegation that the Bank had no present intention to attempt to restructure the loans when that statement was made. See id. ¶¶ 153, 161-64. Instead, the Amended Complaint merely notes that Sun never acted upon the allegedly promised "attempt to restructure". Id. Absent an allegation that Mr. Brehm falsely represented his (or the Bank's) present intention regarding any attempt to restructure the SBA loans when he allegedly made the statement, the claim for fraudulent misrepresentation based upon this statement must be dismissed. See Mellon Bank Corp., 91 F.2d at 1410.

As to the second alleged instance of fraudulent misrepresentation, Rapid Circuits contends that the recipients of the letter were induced to act in a way that harmed Rapid Circuits, notably that "it was [Sun's] intention that the funds owing by customers to [Rapid Circuits] would be directly to [Sun], based on misrepresentation." Id. ¶ 165. However, the Court cannot locate any allegation that *Rapid Circuits* somehow relied upon the statements in this letter to its detriment. Further, the Court finds persuasive Sun's argument that only the recipients of the letter, none of whom are parties to this suit, would have standing to assert a claim of fraudulent misrepresentation for any of the statements made in the letter.

Therefore, Count V for fraudulent misrepresentation is dismissed in its entirety.

iv. Defamation

A plaintiff invoking Pennsylvania law in an action for defamation has the burden of proving: (1) the defamatory character of the communication; (2) the publication of the

communication by the defendant; (3) the application of the communication to the plaintiff; (4) the recipient's understanding of the communication's meaning; (5) the recipient's understanding that the communication is meant to be applied to plaintiff; (6) special harm resulting to plaintiff; and (7) abuse of a conditionally privileged occasion. See 42 Pa. C.S.A. § 8343(a); see also Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 561-62 (E.D. Pa. 2000).

"A federal court sitting in diversity applies the federal rules of civil procedure, even when enforcing the federal rule alters the mode of enforcing state-created rights. Therefore, Federal Rule of Civil Procedure 8(a), and not Pennsylvania law, provides the standard of specificity applicable to plaintiff's defamation claim." Tuman v. Genesis Associates, 935 F. Supp. 1375, 1391 (E.D. Pa. 1996); see also Rishell v. RR Donnelley & Sons Co., No. 06-4782, 2007 WL 1545622, at *3 (E.D. Pa. May 24, 2007); CDI Int'l, Inc. v. Marck, No. 04-4837, 2005 WL 327536 (E.D. Pa. Feb. 8, 2005); Windowizards, Inc. v. Castle "The Window People", Inc., No. 00-4680, 2001 WL 586810 (E.D. Pa. May 30, 2001). This standard of specificity requires a plaintiff to "allege facts which sufficiently set forth the substance of the alleged defamatory statements to give proper notice of plaintiff's claim to defendants." Turk v. Salisbury Behavioral Health, Inc., No. 09-6181, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 27, 2010).

As to the first element of a defamation claim, a statement is defamatory "if it tends to blacken a person's reputation or . . . injure him in his business or profession." Green v. Minzer, 692 A.2d 169, 172 (Pa. Super. Ct. 1997) (citing Livingston v. Murray, 612 A.2d 443, 447 (Pa. Super. Ct. 1992)); see also Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001). Whether a reasonable listener would construe an alleged statement as defamatory is a question of law to be determined by the court. Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999).

"In determining whether a communication is defamatory, the court must view the statement 'in context' with an eye toward 'the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" Remick, 238 F.3d at 261 (quoting Baker v. Lafayette College, 532 A.2d 399, 402 (Pa. 1987)). Thus, courts must determine whether statements injure an individual in his business or profession. Id. In so considering, "the nature of the audience hearing the remarks is a critical factor in determining whether the communication is defamatory." Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. Ct. 1996).

"Under Pennsylvania law, 'counts alleging defamation should not be dismissed unless . . . it is clear that the communication is *incapable* of defamatory meaning.'" Centennial School District v. Independence Blue Cross, 885 F. Supp. 683, 686 (E.D. Pa. 1994) (emphasis added) (quoting Petula v. Mellody, 588 A.2d 103, 108 (Pa. Commw. Ct. 1991)); see also Tucker v. Fischbein, 237 F.3d 275, 282 (3d Cir. 2001). "Where there is any doubt that the communication disparages or harms the complainant in his business or profession, that doubt must be resolved in favor of the complainant; even where a plausible innocent interpretation of the communication exists, if there is an alternative defamatory interpretation, it is for the jury to determine if the defamatory meaning was understood by the recipient." Pelagatti, 536 A.2d at 1345. Statements that have been found capable of having a defamatory meaning include, for example, statements that accuse a business man of deliberately and flatly refusing to pay an account, Will v. Press Pub. Co., 164 A. 621, 623 (Pa. 1932); statements that effectively contend an attorney has committed improper, illegal actions in the context of his practice, Pelagatti, 536 A.2d at 1345-46; a statement than an employee quit without notice, Birl v. Philadelphia Elec. Co., 167 A.2d 472

(Pa. 1960); an advertisement implying a competitor had bad business practices, Cosgrove Studio & Camera Shop, Inc. v. Pane, 182 A.2d 751 (Pa. 1962); and statements that a medical student cheated on a certification exam, American Bd. of Internal Medicine v. Von Muller, No. 10-2680, 2011 WL 857337, at *8-9 (E.D. Pa. Mar. 10, 2011).

The Attorneys contend that Rapid Circuits' defamation claim fails because it was not pled with sufficient specificity; because the statements attributed to them were true and incapable of a defamatory meaning; and because the alleged harm suffered by Rapid Circuits more likely flowed from the undisputed fact of its default than from any alleged defamatory statements. Sun, in turn, argues that the letters to Rapid Circuits' customers did not include any defamatory statements such that Rapid Circuits cannot establish a claim for defamation; that any statements contained within the letter are incapable of having defamatory meaning regardless of how Rapid Circuits portrays the implications of the letter; and that Rapid Circuits admits the statements are true such that Sun can now assert the defense of truth against the claim of defamation. Sun also contends that since Rapid Circuits does not dispute the default or Sun's rights as a secured lender, the communications are actually privileged and liability cannot follow from their publication.

Rapid Circuits responds that it has sufficiently identified the statements, the time at which they were made, and the impact the comments had upon their business to satisfy federal pleading standards for a claim of defamation. Rapid Circuits points to the subject line of "Sun National v. Rapid Circuits" and the statement that the law firm represented Sun in "proceedings" against Rapid Circuits as creating the false, and thus defamatory, impression among its clients and general business community that Rapid Circuits was engaged in litigation with its lender, an

impression that caused severe, negative effects on Rapid Circuits' ongoing business. Finally, Rapid Circuits argues that because the actions taken by the Defendants were not commercially reasonable under the circumstances, particularly indicating pending litigation and publishing such statements to companies that did not owe Rapid Circuits money, the statements in the letter are not privileged.

The Amended Complaint clearly alleges that the Attorneys sent out a number of letters in early August 2010, letters which were titled "Sun National Bank v. Rapid Circuits, Inc." and which stated that the Attorneys represented the Bank in "proceedings" against Rapid Circuits. Am. Compl. ¶¶ 21-23. The letters allegedly "falsely implied that the Bank had commenced legal proceedings against Rapid Circuits." Id. ¶ 116. Rapid Circuits alleges that Sun and the Attorneys acted intentionally and with reckless disregard to the truthfulness of the communications, and published these communications to Rapid Circuits' customers and the business world in which Rapid Circuits operates. Am. Compl. ¶¶ 227-28, 230. Rapid Circuits further alleges that the communications led customers and other members of the business community to believe false information, as a result of which the name and reputation of Rapid Circuits was tarnished and its business has suffered. Id. ¶¶ 232-34.

The use of the title "Sun National Bank v. Rapid Circuits, Inc" and the reference to Sun and Rapid Circuits being involved in "proceedings" occurred in a letter that otherwise stated Rapid Circuits had defaulted on its loan servicing obligations. A reasonable reader could construe the letters to imply that the parties here were already engaged in litigation regarding those loans at the time the letters were sent. See Livingston, 612 A.2d at 449. Notwithstanding Sun's argument that any alleged *harm* from the letters likely resulted from the disseminated fact

that Rapid Circuits was in default, at issue is whether an implication of litigation, in the context of an acknowledged loan default, can itself be defamatory as a matter of law. The parties have not identified any case under Pennsylvania law in which a court has addressed whether the implication that an individual or company is involved in litigation concerning commercial activities could be considered actionable defamation. Nor has the Court located any such case.

The Court has significant doubts that in the 21st century claiming or intimating that someone in business – either individual or organization – is involved in collection litigation, but is not actually so, is a statement capable of being defamatory. Perhaps the Court's doubts spring from a professional life in and around litigation and years of becoming accustomed to litigation so as to respect and encourage use of litigation as a meaningful, appropriate and mature means for resolving disputes. Indeed, familiarity with commercial litigation includes the recognition that it is not uncommon for litigants haled into court ultimately to be victorious and vindicated. Thus, it may be difficult to see the opportunity for defamation. In any event, it is possible that the best evaluation of potential defamation arising from being wrongly identified as a collection action litigant defendant may be other than from the perspective of full time participation in the litigation process. The Court also recognizes, pursuant to its obligation to resolve doubts in favor of the complainant, that a small company subjected to a public disclosure that it was involved in active litigation with its lender could be harmed in its business because its viability as an ongoing enterprise could be called into question.[6]

---

[6] Although noting arguments made by counsel for defendants at oral argument and in the papers, the Court does not now consider whether the alleged defamatory statements are true such that defendants can successfully mount an affirmative defense at this stage of the litigation. See Ciolli v. Iravai, et al., 651 F. Supp. 2d 356, 376 (E.D. Pa. 2009); Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 561-63 (E.D. Pa. 2000) (truth as a defense is an inappropriate consideration at this

Therefore, the Court does not dismiss this Count, but expects the Defendants will seek to develop the factual record promptly on this point, and may well want to raise these arguments again on the basis of a more complete record and perhaps more in-depth legal research.

v. <u>Invasion of Privacy</u>

Under Pennsylvania law, invasion of privacy can be alleged as "unreasonable intrusion upon the seclusion of another," as "unreasonable publicity given to another's private life," and as "publicity that unreasonably places the other in a false light before the public." <u>Burder v. Blair Med. Assocs., Inc.</u>, 964 A.2d 374, 376 (Pa. 2009).

In Count X of its Amended Complaint, Rapid Circuits alleges that the Defendants are liable for invasion of privacy, as they "intentionally and knowingly intruded on the solitude or seclusion of [Rapid Circuits'] private affairs or concerns", actions which "resulted in publicity concerning the private lives or matters of [Rapid Circuits] that resulted in harm to [Rapid Circuits]." Am. Compl. ¶¶ 238-39. Rapid Circuits avers that the matters publicized via the letters are not of legitimate concern to the public, and the publication thereof has severely

---

stage of the case). Furthermore, the Court does not presently consider whether Rapid Circuits and the Zysks and the Hudsons are so intertwined that defamation of the corporation could harm the individuals. <u>See</u> <u>Ocudyne, Inc v. KMI, Inc.</u>, No. 93-5971, 1994 WL 105541 (E.D. Pa. 1994).

The Court also declines to consider Sun's argument that its statements were privileged. "Communications are privileged when made on a proper occasion, from a proper motive, and in a proper manner." <u>Rockwell v. Allegheny Health, Education & Research Fdn</u>, 19 F. Supp. 2d 401, 408 (E.D. Pa. 1998) (citing <u>Maier v. Maretti</u>, 671 A.2d 701, 705 (Pa. Super. Ct. 1995)). Rapid Circuits has alleged the Defendants' motive in communicating to account debtors and non-account debtors alike that Rapid Circuits' was in active litigation with its lender, and thus potentially threatened as an ongoing enterprise, was an effort to force Rapid Circuits out of business and to liquidate its assets. The Court notes that this motive, as alleged, is improper. However, as the parties have not briefed the issue of whether a conditional privilege applies, the Court will not decide that issue.

damaged Rapid Circuits' business and reputation and has interfered with Rapid Circuits' present and future business and orders.  Id. ¶¶ 241-43.  Finally, Rapid Circuits alleges that a reasonable person would find the publication of the letters highly offensive, and that it has suffered significant and substantial damage as a result of that publication.  Id. ¶¶ 240, 247.  As the Amended Complaint did not specify what variant of invasion of privacy was violated by the above-described actions, the parties argued all three.

*a. Intrusion upon Seclusion*

"To state a claim for intrusion upon seclusion, plaintiffs must allege conduct demonstrating 'an intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and [must] aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities.'"  Boring v. Google Inc., 362 F. App'x 273, 278-79 (3d Cir. 2009) (quoting Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002)).  A defendant is liable for intrusion on seclusion only when he intrudes into a private place, or otherwise invades a private seclusion about plaintiff's person or affairs.  Harris by Harris v. Easton Publishing Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984).  The claim usually involves a defendant who does not believe that he has the legal authority to do the intrusive act.  O'Donnell v. United States, 891 F.2d 1079, 1083 (3d Cir. 1989) (granting summary judgment to Veterans' Administration hospital for a claim of intrusion upon seclusion where the hospital believed it had permission from an individual to release that individual's medical records to his employer).  "Courts . . . decide the 'highly offensive' issue as a matter of

law at the pleading stage when appropriate." Boring, 362 F. App'x at 279 (citing a case in which defendant's motion to dismiss plaintiff's invasion of privacy claim was denied because allegations that a debt collector called plaintiff at home and stated he would repossess all her belongings established a claim for invasion of privacy).

Sun argues that Rapid Circuits has not sufficiently alleged facts to support a claim for intrusion upon seclusion. Particularly, Sun contends that Rapid Circuits has not alleged that Sun or its Attorneys believed they lacked the legal authority to send the collection letters. Rapid Circuits responds that its allegation that the Attorneys sent the letter to customers that they and Sun were not certain owed money to Rapid Circuits supports an inference that Sun knew it did not have legal authority to send the letters, and thus it has plead sufficient facts to support its claim for intrusion on seclusion.

The Court refers to the Amended Complaint to determine whether Rapid Circuits' allegations support an inference that the defendants knew their conduct was legally impermissible. Rapid Circuits does allege on information and belief that the August 2, 2010 letters went to customers which may not have owed accounts receivable. See, e.g., Am. Compl. ¶ 38. However, Rapid Circuits also specifically alleges that the actions of the defendants were taken "pursuant to Pa.C.S.A. § 9607", id. ¶ 100, and that "13 Pa.C.S.A. § 9607 permits creditors . . . to seize . . . accounts receivable of a debtor prior to entry of any judgment, without notice to the debtor or a hearing or opportunity to respond," id. ¶ 99. "The Letters . . . stated that [Rapid Circuits] previously provided the Bank with a summary of accounts receivable that indicated the customers had purchased equipment or services from [Rapid Circuits] and owed payments to [Rapid Circuits] for those transactions." Id. ¶ 30. Nowhere does Rapid Circuits allege that

Defendants knew this list of accounts receivable was outdated or otherwise inaccurate.

Rapid Circuits' own allegations regarding the actions taken by Defendants do not permit an inference that the Defendants knew they lacked legal authority to send the letter, but instead support the reasonable inference that the Defendants *believed* their actions were legally permissible.[7]  As a result, Rapid Circuits fails to state a claim for intrusion on seclusion.

*b. Publicity Given to Private Life*

"To state a claim for publicity given to private life, a plaintiff must allege that the matter publicized is '(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public.'"  <u>Boring</u>, 362 F. App'x at 280 (quoting <u>Harris by Harris</u>, 483 A.2d at 1384) (dismissing the claim because the publicity, here posting on Google Maps a dated image of the street on which plaintiffs reside, would not be highly offensive to a reasonable person).  Publicity in this instance requires that the matter is made public by communicating it to so many people that the matter must be regarded as substantially certain to become one of public knowledge.  <u>Harris by Harris</u>, 483 A.2d at 1384.

Sun argues that, notwithstanding Rapid Circuits' allegations that the letters went to a multitude of recipients, the sending of letters to a discrete list of customers previously identified as account debtors by Rapid Circuits is not sufficient dissemination to amount to "publicity" for purposes of stating a claim for publicity given to private life.  Sun further argues that Rapid Circuits also fails to state a claim because the facts disclosed in the letter were not private, and

---

[7] The Court specifically does not determine whether or not the Defendants actions were *actually* privileged or legally permissible, but instead limits this conclusion to Rapid Circuits' allegations regarding the Defendants' *belief* about the legality of their actions.

that a reasonable person would not find their dissemination highly offensive. Rapid Circuits disputes Sun's characterization of the allegations, and instead contends that, as alleged in the Amended Complaint, "private facts regarding the Plaintiffs' sensitive financial information were disclosed to companies and entities that were not privileged to receive the information." Rapid Circuits further argues that the "circulation of letters containing sensitive and private financial information . . . to unwarranted recipients would be highly offensive to a reasonable person."

Although not expressly argued by Rapid Circuits, the Court infers from Rapid Circuits' argument regarding "sensitive financial information" that the disseminated "private fact" for which it seeks to hold Defendants liable is the fact of Rapid Circuits' default, identified in the letter sent to the customer list as the motivation for sending the letter. See August 2, 2010 Letter, attached as Ex. 1 to Compl. Unreasonable publicity given to the existence of a debt can constitute an invasion of privacy. See Vogel v. W. T. Grant Co., 327 A.2d 133, 135 (Pa. 1974). A communication of a private fact may not be actionable publicity even when that private fact is disseminated to a small group; it is decidedly actionable publicity when it is disseminated to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Id. at 137. Rapid Circuits has certainly alleged that the facts contained in the letter have been disseminated beyond the initial list of recipients. See Am. Compl. ¶ 46, 48-50. However, the Court cannot identify any allegation that this information has become "public knowledge" beyond the perhaps limited sphere of individuals or corporations interested in the financial status of Rapid Circuits. Absent an allegation of broader publicity, Rapid Circuits fails to state a claim for publicity given to private life.

*c. False Light Publicity*

False light invasion of privacy involves publicity that unreasonably places the other in a false light before the public. Ciolli v. Iravani, 651 F. Supp. 2d 356, 376 (E.D. Pa. 2009). To find a cause of action for false light, there must be "a major misrepresentation of a person's character, history, activities or beliefs . . . that could reasonably be expected to cause a reasonable man to take serious offense." Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 654 (Pa. Super. Ct. 1999). Negligence may not support a claim of false light publicity. Ciolli, 651 F. Supp. 2d at 376. Instead, the actor must have "had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Lin v. Rohm and Haas Co., 293 F. Supp. 2d 505, 522 (E.D. Pa. 2003) (quoting Curran v. Children's Service Center of Wyoming County, Inc., 578 A.2d 8, 12 (Pa. Super. Ct. 1990)). Examples of "a major misrepresentation that could reasonably be expected to cause a reasonable man to take serious offense" include statements on one website indicating that a plaintiff was responsible for vile and offensive material posted on another website, Ciolli, 651 F. Supp. 2d at 377, and a statement that an otherwise law-abiding librarian falsely pulled a fire alarm at a professional office, Ciemniecki v. Parker McCay P.A., No. 09-6450, 2010 WL 2326209 at *14 (D.N.J. June 7, 2010).

Sun argues that the Amended Complaint fails to state a claim for false light publicity because the letter did not contain any falsehoods. Furthermore, Sun contends that Rapid Circuits does not allege a "major misrepresentation of [its] . . . history [or] activities . . . that serious offense may reasonably be expected to be taken" such that its claim fails. Rapid Circuits replies that "a major misrepresentation of the Plaintiffs' financial and litigation status and/or activities has been thrust into the public's eye", notably that Rapid Circuits "was involved in litigation

proceedings which simply was not the case at the time the letters were distributed."

Rapid Circuits alleges that the letters falsely implied that Sun had commenced legal proceedings against Rapid Circuits. Am. Compl. ¶ 116. Although Defendants dispute this allegation and contend that the contents of the letters were true, it is not appropriate for the Court at this stage in the litigation to determine whether or not the statements contained in the letter are true. Graboff v. The Collern Firm, No. 10-1710, 2010 WL 4456923, at *13 (E.D. Pa. Nov. 8, 2010); see also Ciolli, 651 F. Supp. 2d at 377.

Recognizing that Rapid Circuits alleges that "the defendants' publicizing matter of such kind about the plaintiffs was highly offensive to the plaintiffs and publicizing matter of such kind about a reasonable person would be highly offensive to that reasonable person", id. ¶ 240, the Court can find no factual allegations to support this conclusory allegation. Absent supportive factual allegations, a mere recitation of the elements of a claim does not suffice to state a claim upon which relief can be granted.

For the reasons discussed, Rapid Circuits has not stated a claim for invasion of privacy consistent with any of that tort's iterations, and Count VII is dismissed.

### 3. State Law Claims Asserted Solely Against Sun

The Court next addresses Rapid Circuits' claims of Breach of Duty of Good Faith and Fair Dealing (Count I), Promissory Estoppel (Count III), and Vicarious Liability (Count XI), asserted only against Sun.

i. <u>Breach of Duty of Good Faith & Fair Dealing</u>

Sun, the only defendant in privity with Rapid Circuits, contends that Rapid Circuits' claim for breach of the implied covenant fails in the absence of an allegation that Sun breached the contract at issue. Sun then argues that the claim for breach of the implied covenant fails because its actions were sanctioned by the terms of the loan agreement and thus were privileged such that the claim must fail as a matter of law.

Rapid Circuits contends in opposition that it did, in fact, assert the breach of the implied covenant "as a claim for breach of contract." In support of this contention, Rapid Circuits identifies the allegation in its Amended Complaint that "the Bank's actions and the actions of the Bank's Counsel on the Bank's behalf constituted a breach of the Bank's contractual duty owed to RCI and the other Plaintiffs." Am. Compl. ¶ 114.

In Pennsylvania, the implied duty of good faith is "tied specifically to and is not separate from the duties a contract imposes on the parties." <u>Murphy v. Duquesne Univ. of the Holy Ghost</u>, 777 A.2d 418, 434 (Pa. 2001). Furthermore, breach of the covenant is not a stand-alone claim – a party cannot maintain a breach of the implied covenant of good faith and fair dealing absent an assertion of a breach of contract claim (into which the breach of covenant claim is subsumed). <u>See</u> <u>LSI Title Agency, Inc. v. Evaluation Services, Inc.</u>, 951 A.2d 384, 391-92 (Pa. Super. Ct. 2008); <u>see also</u> <u>JHE, Inc. v. Southeastern Pennsylvania Transp. Authority</u>, 2002 WL 1018941, at *5 (Pa. Com. Pl. Ct. May 17, 2002) ("A claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself.") .

In Count I of the Amended Complaint, Rapid Circuits alleges that Sun breached the

35

contract between the parties, and in turn breached the covenant of good faith and fair dealing. Rapid Circuits characterizes Sun's actions as being taken in bad faith, particularly the conduct of sending collection letters to Rapid Circuits' customers (customers who, in some cases, Rapid Circuits believes did not owe any money to Rapid Circuits), forbidding Rapid Circuits from lining up another investor or from investing additional personal funds of the principals in the company, and acquiring the residential mortgage of one principal. Am Compl. ¶¶ 110-29. Rapid Circuits does not, however, specify which, if any, of Sun's actions allegedly breached the contract between the parties, or how any such actions constituted a breach of the contract.

To be sure, Rapid Circuits does contend that Sun breached a "contractual duty owed" to Rapid Circuits, but, despite careful search throughout the pleadings, the Amended Complaint simply does not identify any specific provision of, or duty under, the contract between the parties that was supposedly breached. Absent "the technical breach of contract basis that is required in order to pursue a claim based on the breach of an implied covenant of good faith and fair dealing", Rapid Circuits "fails to state a claim for breach of the implied covenant of good faith and fair dealing," Temple University Hospital, Inc. v. Group Health, Inc., No. 05-102, 2006 WL 146426, at *6 (E.D. Pa. Jan. 12, 2006). Consequently, this claim must be dismissed.


ii. Promissory Estoppel

Pennsylvania law provides that "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.,

636 A.2d 156, 160 (Pa. 1994) (quoting Restatement (Second) Contracts § 90(1)). Following from this, "to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." Crouse v. Cyclops Industries, 745 A.2d 606, 610 (Pa. 2000). "To satisfy the first element of a promissory estoppel claim, plaintiff must plead facts to show the existence of an express promise made by defendants. In meeting this burden, plaintiff cannot rely on a broad and vague implied promise." Woods v. ERA Med LLC, No. 08-2495, 2009 WL 141854, at *5 (E.D. Pa. Jan. 21, 2009) (finding plaintiff's allegation of previous "assurances" and previous "agree[ment] and promise[s]" sufficient to establish the existence of a promise for purposes of surviving a motion to dismiss); see also C & K Petroleum Prods., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988). Satisfaction of the requirement that enforcement must be necessary to avoid injustice "may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, [and] on the formality with which the promise is made." Thatcher's Drug Store, 636 A.2d at 160 (citing Restatement (Second) of Contracts § 90, cmt. b).

In Count III of the Amended Complaint, Rapid Circuits asserts that "the Bank represented to the [P]laintiffs that it would *attempt* to restructure the SBA Loans"; that "in making this representation, the Bank did or should have expected that Plaintiffs would anticipate a proposal for restructuring of the SBA loans"; and that Plaintiffs detrimentally relied upon this promise. Am. Compl. ¶¶ 145-51 (emphasis added). Upon careful review of the Amended Complaint, the

Court can locate no instance in it in which the alleged representation by Sun regarding loan restructuring is described as anything other than an attempt to restructure, and no instance where Sun is alleged to have taken specific actions with respect to the loans, other than an attempt to restructure them.  See id. ¶¶ 19, 145, 161-62, 164; see also Hr'g Tr, 68-72.

Sun contends that the alleged "promise" that it would attempt to restructure the loans or create a different payment plan is too insubstantial to serve as a promise upon which promissory estoppel could rest.  Further, Sun argues that Rapid Circuits does not assert any detrimental reliance, without which, of course, no relief is merited.  In opposition, Rapid Circuits maintains that the alleged statement by an officer of Sun at some point in the first half of 2010 that an effort would be made to restructure the loans was a statement that caused Rapid Circuits to focus on running its business instead of immediately seeking alternative financing.  Rapid Circuits also claims that this is a sufficient promise to support the claim of promissory estoppel, and is so much so that the motion to dismiss as to this Count should be denied.

Rapid Circuits, citing Burton Imaging Group v. Toys "R" Us, Inc., 502 F. Supp. 2d 434, 440-41 (E.D. Pa. 2007) and Ankerstjerne v. Schlumberger Ltd., No. 03-3607, 2004 WL 1068806 (E.D. Pa. May 12, 2004), correctly notes that, as described above, establishing the first element of promissory estoppel requires "an express promise between the promisor and the promisee" where an "express promise must be an indication with 'reasonable certainty' of the intent of the parties."  In affirming the district court's grant of summary judgment for the defense in Ankerstjerne, the Third Circuit Court of Appeals found that the statement by a manager that he "would get [a bonus payment] taken care of . . . per the terms of the compensation plan" is "simply too vague and indefinite to constitute a 'promise' for purposes of promissory estoppel."

155 F. App'x 48, 51 (3d Cir. 2005). Further, the appellate court concurred with the district court's conclusion that this statement failed to serve as a promise for purposes of promissory estoppel because it lacked specific information as to the amount of payment, from whom such payment would be made, how such payment would be calculated, and when it might be paid. Id.

The statement attributed to Sun in the allegations of the Amended Complaint, namely that Sun would "attempt to restructure the SBA loans", does not contain any of the specific information that also had been found to be lacking in Ankerstjerne. Indeed, the Amended Complaint here contains no allegations as to how, by when, or under what feasible terms the loans might have been restructured.

Because the allegations contained the Amended Complaint, that Sun would "attempt" to restructure the loans, lack the degree of specificity regarding the details of an allegedly promised course of action by Sun, the statement that Sun would "attempt" to restructure the SBA loans cannot, as a matter of law, serve as a "promise" for purposes of promissory estoppel, and this claim in Count III must be dismissed.

iii. Vicarious Liability

Pennsylvania law does not permit recovery from an alleged controlling corporation "unless the party seeking to pierce the corporate veil on an alter-ego theory establishes that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 14 (3d Cir. 1990). Pennsylvania law requires a showing of pervasive domination to establish liability under such a theory. Id. at 15. To determine whether

a corporation was an alter ego under Pennsylvania law, the Court must consider the following factors:

> (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) failure to pay dividends; (4) the insolvency of the debtor corporation; (5) siphoning of funds by the dominant stockholder; (6) nonfunctioning officers or directors; (7) absence of corporate records; (8) intermingling of funds; (9) the fact that the subservient corporation is merely a facade for the operations of the dominant stockholder; and (10) a finding of fraud or fundamental unfairness.

Pearson v. Component Technology Corp., 80 F. Supp. 2d 510, 523 (W.D. Pa. 1999); see also Eastern Minerals & Chemicals Co., 225 F.3d 330, 333 n.7 (3d Cir. 2000).  "No single criterion is dispositive, and the list itself is not exhaustive."  Pearson, 80 F. Supp. 2d at 523.  In considering whether one corporation demonstrates pervasive domination of another, the Court may take judicial notice of documents filed with the SEC but not relied upon in the Amended Complaint. See In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1331 (3d Cir. 2002).

In Count XI of the Amended Complaint, Rapid Circuits seeks to hold defendant Sun Bancorp, Inc. vicariously liable for the actions of Sun National Bank and of the Attorneys. Specifically, Rapid Circuits alleges that Sun Bancorp is the parent of Sun National Bank, Am. Compl. ¶ 10, that, on information and belief, the acts of Sun and the Attorneys were taken for the benefit of Sun Bancorp, and that the Attorneys and Sun National acted as agents for Sun Bancorp, id. ¶¶ 249, 250.  Rapid Circuits thus contends that Sun Bancorp is legally responsible for the acts of Sun National and the Attorneys "under the doctrines of vicarious liability, agency, ostensible agency, and/or alter ego."  Id. ¶ 252.

Sun argues that Rapid Circuits has not alleged facts sufficient to hold Sun Bancorp vicariously liable for the actions of Sun National.  Sun contends that to state a valid claim, a

plaintiff must allege facts that show the controlled corporation acted in a puppet-like manner, responsive to the tugs of the controlling corporation, and that Rapid Circuits has failed to allege such a relationship.  Furthermore, Sun argues that Rapid Circuits has not alleged any facts that would be relevant to a consideration of whether a corporation was an alter ego under Pennsylvania law.

In opposition to Sun's argument, Rapid Circuits contends that the allegations of the Amended Complaint, together with publicly-available financial documents of the corporation, suffice to show that Sun National acted in a robot- or puppet-like fashion in response to the "tugs" of Sun Bancorp, and that Sun Bancorp wholly ignored the separate status of Sun National and so controlled its affairs that the separate existence was a sham.  Rapid Circuits directs the Court's attention to the 2009 Annual Report of Sun Bancorp, which states that its principal business is to serve as a holding company for Sun National.  Rapid Circuits further cites to the 2010 proxy statement, which indicates that the companies share the same address, the same Chairman, and the same President and CEO.  Rapid Circuits argues that Court can properly consider these facts, and that these facts, in addition to its allegations "on information and belief" that the acts of Sun and the Attorneys were taken on behalf of Sun Bancorp, sufficiently make out a claim for vicarious liability.  <u>See</u> Am Compl. ¶ 249.

Rapid Circuits has identified some facts to support its allegation that, on information and belief, the acts of Sun and the Attorneys were taken on behalf of Sun Bancorp, notably the shared officers and address of Sun National and Sun Bancorp, and the role of Sun Bancorp to serve as a holding company for Sun National.  However, Rapid Circuits has neither alleged nor argued that any of these identified facts could support an inference that Sun Bancorp "wholly ignored the

separate status" of Sun National and "so dominated and controlled" Sun National's affairs such

"that its separate existence was a mere sham." <u>Culbreth</u>, 898 F.2d at 14. Further, Rapid Circuits

has not argued how or whether any of the factors enumerated in <u>Pearson</u> support its contention

that Sun Bancorp should be held vicariously liable for the actions of Sun National. Absent any

such allegations or argument, Rapid Circuits' claim to hold Sun Bancorp vicariously liable for

the actions of Sun National and the Attorneys fails. Therefore, Count XI is dismissed.

### B. Federal Claims

Rapid Circuits brings two federal claims. First, Rapid Circuits alleges in Count VI that

all Defendants violated its constitutional rights while acting under color of state law, thereby

violating 42 U.S.C. § 1983. Second, Rapid Circuits alleges in Count VII that the Attorneys, in

sending out the collection letters, violated the Racketeer-Influenced Corrupt Organization Act, 18

U.S.C. § 1962(c). These claims are discussed *ad seriatim*.

### 1. Section 1983 Liability

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that defendants violated

constitutional rights of that plaintiff and did so while acting under color of state law. <u>Steele v.

Richardson</u>, 347 F. App'x 754, 755 (3d Cir. 2009) (citing <u>Groman v. Twp. of Manalapan</u>, 47

F.3d 628, 638 (3d Cir. 1995)). Acting under color of state law does not rest on "whether the state

was involved in some way in the relevant events, but [instead on] whether the action taken can be

fairly attributed to the state itself." <u>Id.</u> at 755-56. As such, "before private persons can be

considered state actors for purposes of section 1983, the state must significantly contribute to the

constitutional deprivation, e.g. authorizing its own officers to invoke the force of law in aid of the private persons' request." <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1266 (3d Cir. 1994). "Whether the state invokes its compulsive powers or merely acquiesces in private conduct is relevant to the analysis." <u>Steele</u>, 347 F. App'x at 756.

In Count VI of the Amended Complaint, Rapid Circuits alleges that Defendants acted under color of state law when they sent out the August 2, 2010 letters and seized Rapid Circuits' property without notice. Rapid Circuits contends that Defendants thereby violated Rapid Circuits' and individual plaintiffs' constitutional due process rights. Am. Compl. ¶¶ 168-69, 185-201. In support of its contention that Defendants acted under color of state law, Rapid Circuits alleges that the inclusion of the UCC-1 Financing Statement "bearing the stamp and seal of the Department of the Secretary for the Commonwealth of Pennsylvania" with the letters "invoked the authority of the Commonwealth of Pennsylvania for the prejudgment seizure embodied in the Letters" and that Defendants thus used the authority of the Commonwealth to seize accounts receivable. <u>Id.</u> ¶¶ 177, 180, 192, 195-96.

The Attorneys argue that Rapid Circuits does not sufficiently allege that Defendants' actions were taken under color of state law such that they, as private actors, can be held liable for violating constitutional rights pursuant to Section 1983. Relying on <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, the Attorneys contend that absent allegations that they relied upon the use of state force to seize property, the Amended Complaint fails to sufficiently allege that the Defendants acted pursuant to state law. The arguments of Sun do not materially differ from those of the Attorneys as to this Count.

In response, Rapid Circuits contends that because Defendants acted pursuant to

provisions in the Uniform Commercial Code as adopted by Pennsylvania and because they stated as much in the letters, Defendants asserted statutory authority under the UCC to collect the money.  Rapid Circuits then dramatically argues that because Defendants attached the parties' UCC-1 Financing Statement, a statement that had been stamped by a clerk of the Commonwealth of Pennsylvania and through which Sun's security interest was perfected, that Financing Statement "acted like a police badge authorizing them to get the money under the official authority of the State."

In Jordan v. Fox, Rothschild, O'Brien & Frankel, the Third Circuit Court of Appeals stated that "before private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the constitutional deprivation, e.g., authorizing its own officers to invoke the force of law in aid of the private persons' request."  Jordan, 20 F.3d at 1266.  For example, "a private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be held liable under section 1983 if his acts cause a state official to use the state's power of legal compulsion to deprive another of property."  Id. at 1267.  The Amended Complaint contains no allegation that the Commonwealth of Pennsylvania authorized its officers to invoke the force of law in the aid of Sun collecting Rapid Circuits' account receivables in the wake of Rapid Circuits' uncontested default.

Absent allegations that the UCC-1 Financing Statement provided authority to Defendants that was not otherwise granted from the terms of the loan documents signed by Rapid Circuits and by Sun, the Amended Complaint does not contain sufficient allegations that Defendants acted under color of state law such that Section 1983 liability could attach to private parties.  See

Steele v. Richardson, 347 F. App'x at 755-56; Jordan, 20 F.3d at 1266-67; Gibbs v. Titelman, et al., 502 F.2d 1107 (3d Cir. 1974) (declining to find state action where vehicle re-possessors, pursuant to the Pennsylvania UCC, would seize cars "without the aid of any state official" and finding instead that the "statute simply permits what private parties have agreed upon"); see also Bichel Optical Laboratories, Inc. v. Marquette National Bank of Minneapolis, 487 F.2d 906 (8th Cir. 1973).

Therefore, Count VI for violations of Rapid Circuits' constitutional rights is dismissed in its entirety.

2. RICO

To state a civil RICO claim under section 1962(c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 364 (3d Cir. 2003) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

Racketeering activity, defined in section 1961(1), includes mail and wire fraud as defined in 18 U.S.C. §§ 1341 and 1343. Where mail and wire fraud are alleged as the predicate acts for a RICO violation, they must be pled with particularity to satisfy Federal Rule of Civil Procedure 9(b); in particular, blanket allegations of mail and wire fraud lacking information of who sent or received the fraudulent representations are insufficient to satisfy Rule 9(b). Banks v. Wolk, 918 F.2d 418, 422 n.1 (3d Cir. 1990). The elements necessary to establish a claim for mail or wire fraud are: (1) a scheme to defraud; (2) the use of the mails or wires for the purpose of executing the scheme; and (3) fraudulent intent. United States v. Pharis, 298 F.3d 228, 234 (3d Cir. 2002).

Plaintiffs may satisfy the burden of establishing a scheme to defraud by showing "some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991).

A plaintiff also must allege a pattern of racketeering activity in order to state a cause of action under RICO. H.J. Inc. v. Nw. Bell Tel Co., 492 U.S. 229, 237-239 (1989). A pattern of racketeering activity requires at least two acts of racketeering, § 1961(5), and a plaintiff must allege at least that many predicate acts to satisfy both a continuity test and a relatedness test to serve as actionable predicate acts for purposes of RICO. H.J Inc., 492 U.S. at 239-40. The continuity test requires either allegations of repeated conduct that must have occurred over a substantial, closed period of time or allegations of conduct that constitutes a threat of continuing criminal action. H.J Inc., 492 U.S. at 240-42. To successfully allege continuity pursuant to a "closed period of time", a complaint must allege that predicate acts took place over more than just a day, or even just a week. See id. at 242; see also Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995). Absent such allegations of duration, a plaintiff can meet the continuity test by plausibly alleging a threat of continued criminal conduct. Tabas, 47 F.3d at 1295. As to the relatedness test, RICO requires that the predicate acts have similar "purposes, results, participants, victims, or methods of commission." H.J. Inc., 492 U.S. at 240.

In Count VII of the Amended Complaint, Rapid Circuits alleges that the Attorneys violated civil RICO. See Am. Compl. ¶¶ 204-221. Rapid Circuits alleges that "using the United States mail system to send Letters to [Rapid Circuits'] present and/or former customers containing fraudulent misrepresentations constitutes mail fraud and is a predicate act under the

46

RICO statute." Id. ¶ 211. Rapid Circuits also contends "on information and belief, [Sun], [Sun's] Counsel and Ms. Markovich developed a regular way of conducting business by sending Letters using fraudulent misrepresentations to demand accounts receivable from [Rapid Circuits]." Id. ¶ 208. The Amended Complaint contains no allegations that this alleged behavior occurred other than in the context of the letters distributed according to a customer list provided at some point by Rapid Circuits to Sun.

The Attorneys contend that Rapid Circuits cannot successfully mold the events described in the Amended Complaint to fit the elements of RICO. In particular, the Attorneys argue that Rapid Circuits cannot allege sufficient acts to meet the continuity test of the RICO statute. Notably, the letters, the sending of which Rapid Circuits contends constitutes mail fraud, were mailed in one very discrete period rather than seriatim over a longer period of time. The Attorneys also maintain that Rapid Circuits has "failed to set forth factual allegations to support their claim that the Attorney Defendants committed the predicate act of mail fraud" and that absent such allegations, they "have not alleged continued criminal conduct" to satisfy the alternative continuity requirement of RICO.

In opposition, Rapid Circuits avers that it has sufficiently alleged the elements of a RICO claim. It maintains that the representations in the letter deceived recipients into thinking that, at the very least, Rapid Circuits and Sun were engaged in active litigation, that these misrepresentations were made with the purpose of inducing Rapid Circuits customers to send payments to Sun, that this conduct constituted a regular business practice presenting a threat of continued conduct, and that Rapid Circuits was injured. As to the continuity requirement, Rapid Circuits argues the Attorneys' actions are its regular business practice, and that but for filing its

lawsuit, the Attorneys would have continued to send out its illegal letters (committing "mail fraud").  Rapid Circuits cites <u>Concern Sojuzvneshtrans v. Buyanovski</u>, 80 F. Supp. 2d 273, 279 (D.N.J. 1999) for the proposition that Sun cannot argue a threat of continuing activity did not exist simply because the scheme was discovered.

Upon careful review of the allegations contained in the Amended Complaint, the Court concludes, without determining whether Rapid Circuits has successfully alleged the predicate acts of mail fraud, that the Amended Complaint does not contain allegations that plausibly suggest the Attorneys were involved in activity that posed a threat of continuing criminal conduct.  The letters that form the basis of the mail fraud allegations "stated that [Rapid Circuits] previously provided [Sun] with a summary of accounts receivable that indicated the customers had purchased equipment, or services, from [Rapid Circuits] and owed payments to [Rapid Circuits] for those transactions."  Am. Compl. ¶ 30.  They were sent "on or about August 2, 2010."  Id. ¶ 21.  The Amended Complaint contains no allegations that the Attorneys had access to any other customer contact information.

These alleged facts depict a discrete mailing targeted at a known, limited number of recipients, and do not support Rapid Circuits' more conclusory allegation that "on information and belief" the Attorneys developed a regular, and continuing, business practice of demanding accounts receivable through fraudulent misrepresentations.  Where a defendant's actions are narrowly directed to a single fraudulent goal and involve a limited purpose, these actions cannot, by themselves, underpin a pattern of racketeering activity.  See <u>Kolar v. Preferred Real Estate Investments, Inc.</u>, 361 F. App'x  354, 365 (3d Cir. 2010) (citing <u>Menasco, Inc. v. Wasserman</u>, 886 F.2d 681, 684 (4th Cir. 1989)).

Because Rapid Circuits has only alleged facts that the Attorneys sent a letter containing allegedly fraudulent misrepresentations to a discrete list of recipients, Rapid Circuits has not successfully alleged a threat of continuing conduct. Therefore, Rapid Circuits fails to state a RICO claim, and Count VII is dismissed.

## C. Injunctive Relief

"Pennsylvania law provides that in order to establish the right to injunctive relief, a plaintiff must 'establish that his right to relief is clear, that an injunction is necessary to avoid an injury that *cannot be compensated by damages*, and that greater injury will result from refusing rather than granting the relief requested.'" Boring, 362 F. App'x at 282 (emphasis added) (quoting Kuznik v. Westmoreland County Bd. of Comm'rs, 902 A.2d 476, 489 (Pa. 2006) and applying Pennsylvania law in a diversity action). An injunction is an extraordinary remedy. See Ambrogi v. Reber, 932 A.2d 969, 974 (Pa. Super. Ct. 2007).

In Count VIII of the Amended Complaint, addressed against all Defendants, Rapid Circuits requests injunctive relief "as is necessary to prevent irreparable harm to the plaintiffs." Am. Compl. ¶ 223. Rapid Circuits alleges that its "business has been and continues to be severely impeded and its reputation has been and continues to be damaged" by the actions of the Bank and its Attorneys because, "on information and belief, payments owing to [Rapid Circuits] from customers continue to be diverted directly to [Sun]." Id. ¶ 224. Rapid Circuits requests injunctive relief that directs an immediate cessation of all communications by Sun and the Attorneys to Rapid Circuits' customers, an immediate and permanent return of all seized funds, and a direction that no further actions be taken that may impede or damage the business of Rapid

Circuits.  See id.

Sun argues that Rapid Circuits could gain injunctive relief only if it otherwise demonstrates that Sun has acted illegally.  Sun maintains that because Rapid Circuits has failed to even allege such action, the claim for injunctive relief must fail.  Sun further argues that waiting nearly three months after the offending letters were sent to file suit weighs in favor of denying Rapid Circuits' request for preliminary injunctive relief.  The Attorneys echo Sun's arguments.

Rapid Circuits maintains that it has set forth viable claims for relief and merits injunctive relief.  As to Sun's argument regarding delay, Rapid Circuits asserts that it did not immediately learn about the letters, and then attempted to contact the Attorneys several times before resorting to litigation.

Rapid Circuits acknowledges, as it should, that it received a form of preliminary relief when the Court, in its Order of January 7, 2011, dissolved a state court injunction but preserved the then-existing status quo by permitting Sun to hold the amounts collected from Rapid Circuits' customers up to that date but prohibiting further contact with Rapid Circuits' customers without advance notice to Rapid Circuits and an opportunity for Rapid Circuits to petition the Court to prevent such contact.[8]

Essentially, Rapid Circuits argues that at issue now is its petition for permanent injunctive

---

[8]  On January 7, 2011, the Court entered an Order (which Sun did not contest) in which it stated that Sun would continue to hold the monies collected from Rapid Circuits' clients, subject to the obligation to render a full and complete accounting, and that Sun would not contact any client of Rapid Circuits without 10 days advance written notice to counsel for Rapid Circuits and with a copy to the Court.  See Order, ECF No. 31.  This Order remains extant, and addresses Rapid Circuits' concern regarding any contact between Sun and customers of Rapid Circuits.

relief.  Rapid Circuits also seeks an injunction that makes Sun return any receivables already collected, but has not articulated a reason why these alleged past activities cannot be compensated by money damages.  Absent this, the claim for injunctive relief will be dismissed, though the Order of January 7, 2011 remains in place.  See Boring, 362 F. App'x at 282.

**Conclusion**

Consistent with the analysis above, the Court grants the Motions to Dismiss in part and denies the Motions in part.

Rapid Circuits' claims for Breach of Covenant of Good Faith and Fair Dealing, Promissory Estoppel, Fraudulent Misrepresentation, Intentional Interference with Prospective Contractual Relations, Injunctive Relief, Invasion of Privacy, Violations of 42 U.S.C. § 1983, and Violations of Civil RICO are hereby dismissed.  Rapid Circuits' claim for Vicarious Liability is also dismissed.

Remaining are Rapid Circuits' claims against all Defendants for Conversion, Defamation, and Intentional Interference with Contractual Relations.

An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE